**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

KELLY McLEAN, on behalf of herself
and all others similarly situated,

     Plaintiff,

 -v.-

AXLE OF DEARBORN, INC., d/b/a
DETROIT AXLE,

     Defendant.
-----------------------------------------------------------------x

Case No. _____

CLASS ACTION COMPLAINT
& DEMAND FOR JURY TRIAL

1.  Plaintiff KELLY McLEAN ("Plaintiff" or "Ms. McLean"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action against AXLE OF DEARBORN, INC., d/b/a DETROIT AXLE ("Detroit Axle" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to design, construct, maintain, and operate its ecommerce website, www.detroitaxle.com,  in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

2.  Plaintiff Kelly McLean is a resident of Bronx County and is permanently disabled due to Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that causes progressive loss of retinal function and severe decline in visual acuity. Her treating optometrist at Bronx Eye Associates confirms that Ms. McLean now has "only minimal residual perception of light and shapes" and is "almost completely blind," with constricted visual fields, impaired night vision, and profound functional sight loss. Her

1

condition is permanent, irreversible, and progressive, and there are currently no curative treatments available for Bietti's Crystalline Dystrophy. Exhibit A

3.      As a legally blind individual, Ms. McLean relies exclusively on screen-reading software and keyboard navigation to access digital content independently. Because she cannot visually interpret website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader-compatible navigation. For Ms. McLean, accessible coding is not optional—it is the only means by which she can access the internet.

4.      According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5.      The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6.      Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images,

contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain inaccessible data tables cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7.    The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8.    In 2026, Ms. McLean sought to independently browse and purchase automotive parts from Defendant's website, www.detroitaxle.com,  for the 2021 Chrysler 300 she owns and maintains on behalf of her family members, close friends, and home health aide who depends on the vehicle to transport Ms. McLean to her medical appointments. Because Ms. McLean's near-total blindness prevents her from using the subway or other public transportation, dependable vehicular transport is a direct necessity of her daily life, and the safe mechanical condition of that vehicle—most critically, its braking system—is a matter of personal safety. She was specifically informed that Detroit Axle's prices are substantially lower than those charged by authorized dealers or garages, making www.detroitaxle.com her preferred online source for necessary automotive parts. She specifically attempted to research and purchase the Front Brake Rotors (Pair), Part No. R-53022x2, and the 4pc Front & Rear Drilled and Slotted Brake Rotors Kit, Part No. 4R1200498—both manufactured to fit the 2021 Chrysler 300—products displayed

prominently throughout Defendant's online catalog and among the pages she attempted to access.

9.     Plaintiff brings this civil action against Axle of Dearborn, Inc., d/b/a Detroit Axle, the operator of www.detroitaxle.com,  for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

10.     On February 3, 2026, March 11, 2026, and May 6, 2026, Plaintiff attempted to access Defendant's Website using screen-reader technology to research and purchase the Front Brake Rotors (Pair), Part No. R-53022x2, and the 4pc Front & Rear Drilled and Slotted Brake Rotors Kit, Part No. 4R1200498, each designed to fit her 2021 Chrysler 300. She attempted to review part specifications, vehicle compatibility information, pricing, and shipping details before completing a purchase.

11.     Despite multiple attempts across these three dates, Plaintiff was unable to independently complete her objectives due to pervasive access barriers. SortSite automated accessibility audits of www.detroitaxle.com,  scanning 1,370 pages and files across the entire Website, identified accessibility violations across 257 pages of the site, including Level A WCAG 2.1 failures—the most severe category—on the homepage, product pages, account creation pages, checkout, and category pages, confirming systemic inaccessibility throughout the Website Plaintiff attempted to navigate.  Exhibit B

12.     The accessibility barriers were systemic and not limited to isolated pages. The SortSite reports documented failures across product images, data specification tables,

4

form controls, navigation elements, and interactive components, confirming that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered.

13.    Defendant operates a retail ecommerce platform through which consumers can browse automotive parts, review part-specific compatibility and specification information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its advertised selection of high-quality, competitively priced automotive parts for her 2021 Chrysler 300—parts she requires to ensure the continued safe operation of the vehicle that her home health aide and family members use to transport her to medical appointments.

14.    Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that www.detroitaxle.com becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

15.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

16.    This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

17.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County, accessed Defendant's Website, www.detroitaxle.com, from within this District, and experienced the discriminatory barriers alleged herein in this District. Various Courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. See *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

18.    Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, www.detroitaxle.com, which allows users to browse inventory by year, make, and model, review part specifications and compatibility information, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

19.    The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA

states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

20.     This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

21.     Plaintiff Kelly McLean is, and at all relevant times was, a resident of Bronx County, New York, residing at 211 East 203rd Street, Apt. 2E, Bronx, New York 10458. Ms. McLean is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist, Viren Patel, O.D., of Bronx Eye Associates, 665 Pelham Parkway North, Bronx, New York 10467, by letter dated January 5, 2026, Ms. McLean has been diagnosed with Bietti's Crystalline Dystrophy, a rare inherited retinal degenerative disorder that has caused progressive retinal deterioration, constricted visual fields, impaired night vision, and profound functional sight loss. Dr. Patel further confirms that Ms. McLean is now "almost completely blind, with only minimal residual perception of light and shapes," and that her condition is permanent, irreversible, and progressive.

22.     Plaintiff is a proficient user of screen-reader technology, including NVDA (NonVisual Desktop Access), and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. McLean depends on businesses to

design, construct, and maintain their websites in a manner that is compatible with screen-reading software.

23.    For Ms. McLean, accessible online shopping is essential to her independence. As a legally blind consumer, she cannot visually browse retail stores or product displays without assistance. She therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products necessary for her safety and daily life. Ms. McLean owns a 2021 Chrysler 300 that she maintains on behalf of her family members, close friends, and her home health aide, who relies on the vehicle to transport Ms. McLean to her medical appointments and other necessary destinations. Because her near-total blindness prevents her from using the subway or other forms of public transportation independently, dependable vehicular transport is a direct and critical necessity. Ms. McLean was specifically informed that Detroit Axle's prices for automotive parts are substantially lower than those charged by authorized dealers or garages, making www.detroitaxle.com her chosen source for necessary replacement parts. When websites lack proper alternative text, labeled controls, accessible data tables, or navigable structure, Ms. McLean is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

24.    Upon information and belief, Axle of Dearborn, Inc., d/b/a Detroit Axle ("Detroit Axle" or "Defendant") is a Michigan corporation with its principal place of business located at 2000 W 8 Mile Rd, Ferndale, Michigan 48220. Defendant manufactures, distributes, and sells new and reconditioned automotive parts—including brake rotors, control arms, wheel bearings, strut assemblies, and suspension components—to consumers throughout the United States under the trademark "Detroit Axle™." Defendant owns,

8

operates, and controls the commercial retail ecommerce Website www.detroitaxle.com (the "Website"), through which it markets, displays, and sells automotive parts directly to consumers nationwide, including residents of New York. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

## STATEMENT OF FACTS

Plaintiff's Attempts to Access Defendant's Website

25.    On February 3, 2026, March 11, 2026, and May 6, 2026, Plaintiff Kelly McLean attempted on three separate occasions to access Defendant's retail ecommerce Website, www.detroitaxle.com, using the NVDA screen reader on her home computer in Bronx County. Because Ms. McLean is "almost completely blind, with only minimal residual perception of light and shapes," she cannot visually browse physical retail stores, examine products on shelves, or inspect automotive parts in person. As a result, she relies entirely on accessible ecommerce websites to research, compare, and purchase parts independently. Plaintiff visited Defendant's Website for the specific purpose of evaluating and purchasing brake components for her 2021 Chrysler 300 at prices substantially lower than those available through authorized dealers or repair garages, but was unable to do so due to pervasive accessibility barriers.

26.    Plaintiff specifically attempted to research and purchase two products: the Front Brake Rotors (Pair), Part No. R-53022x2, and the 4pc Front & Rear Drilled and Slotted Brake Rotors Kit, Part No. 4R1200498—both manufactured to fit the 2021 Chrysler 300 (RWD). Ms. McLean owns a 2021 Chrysler 300 that she maintains on behalf of her family members, close friends, and her home health aide, who depends on the vehicle to transport

Ms. McLean to her medical appointments and other necessary destinations. Because Ms. McLean's near-total blindness renders her unable to use the subway or other public transportation independently, she depends entirely on this vehicle for mobility, and its safe mechanical operation—above all, the integrity of its braking system—is a direct and immediate matter of personal safety. The Front Brake Rotors (Pair), Part No. R-53022x2, are engineered to fit the 2021 Chrysler 300's 12.60-inch (320mm) front brake specification for the Touring, Touring L, S, and C trims; they are ISO9002 certified, exceed OEM specifications, and are marketed for superior stopping power and durability. The 4pc Front & Rear Drilled and Slotted Brake Rotors Kit, Part No. 4R1200498, provides a comprehensive front-and-rear braking solution for all 2021 Chrysler 300 RWD trims and represents the most cost-effective means of ensuring the complete braking system of the vehicle is upgraded at once. For Ms. McLean, these parts are not discretionary purchases—they are safety-critical components upon which her wellbeing and mobility depend, and the substantial cost savings available through www.detroitaxle.com relative to dealer pricing were specifically identified to her as a reason to shop with Defendant. She therefore attempted to evaluate these products online; however, as a blind consumer who cannot independently inspect parts at a physical location, she depends entirely on accessible website content to understand part specifications, vehicle compatibility, pricing, and availability.

27.    Plaintiff attempted to review part names, descriptions, vehicle compatibility details, specifications, pricing, and shipping information. She also attempted to use the Website's interactive controls—including vehicle-year, make, and model selectors, product category navigation, and account and checkout functionality—to locate and evaluate each product's full range of options. However, SortSite automated accessibility audits of

www.detroitaxle.com identified, among other failures, missing and meaningless alternative text on images across 256 pages, inaccessible data tables across 151 product pages, empty headings across 153 pages, unlabeled form controls across 13 pages, and a video on the homepage that autoplays without any pause or stop mechanism. These defects created concrete barriers for Plaintiff, including:

- Product and category images across virtually the entire Website were announced by NVDA either with no description, as a raw filename (e.g., "car-white.svg"), or with a meaningless placeholder value such as "1" or "picture," depriving Plaintiff of any information about the parts depicted, their condition, configuration, or distinguishing characteristics.

- Data tables on 151 product pages—including the very product detail pages for brake rotors and brake kits that Plaintiff attempted to access—lacked proper header markup, th elements, scope attributes, and headers associations, causing NVDA to read rows and columns of part specifications as a disjointed stream of numbers and text with no indication of which value corresponded to which specification.

- Empty headings across 153 pages caused NVDA to announce heading elements with no content, disorienting Plaintiff and preventing her from using NVDA's heading-navigation feature to understand the structure of any product page.

- HTML form controls on 13 pages, including the Cart, the Create-Account page, and the Login page, had no accessible name, causing NVDA to read the control type aloud (e.g., "edit" or "button") with no label, making it

impossible for Plaintiff to understand what information each field required or to complete any transaction.

- A video on the homepage played automatically for longer than five seconds with no mechanism to pause, stop, or hide it, causing the autoplaying audio to overlay NVDA's speech output and preventing Plaintiff from hearing or understanding the content of the homepage.

- Images with null alt attributes that simultaneously bore title, aria-label, or aria-labelledby attributes on 256 pages throughout the site caused NVDA to announce conflicting or raw filename text—such as the image filename itself—creating confusion and preventing Plaintiff from forming a coherent understanding of any product page.

28. As a result, Plaintiff could not reliably navigate the product pages, evaluate the products' specifications and compatibility with her 2021 Chrysler 300, or select any item for further review or purchase.

29. Plaintiff also attempted to access additional areas of the Website—including Defendant's brake rotors category pages, parts category listings, and general site navigation—because these pages contained overlapping listings and similar interactive components. The SortSite reports documented the same categories of failures—missing and meaningless alternative text, inaccessible data tables, empty headings, unlabeled form controls, and improperly attributed images—across these pages as well. These failures caused NVDA to read interactive elements as "button," "link," or raw filenames without context, preventing Plaintiff from identifying, comparing, or navigating to products.

30.     On each of the three dates, Plaintiff attempted to evaluate the Front Brake Rotors (Pair), Part No. R-53022x2, and the 4pc Front & Rear Drilled and Slotted Brake Rotors Kit, Part No. 4R1200498, to determine which product best met her vehicle's maintenance and safety requirements. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

Systemic Barriers Confirmed by SortSite

31.     Plaintiff's counsel conducted an automated accessibility audit of www.detroitaxle.com using SortSite, a leading automated website testing tool developed by PowerMapper Software Ltd, based in Edinburgh, Scotland (www.powermapper.com/products/sortsite/). SortSite is capable of scanning an entire website in a single operation and evaluating it against over 320 WCAG 2.1 accessibility tests covering Levels A, AA, and AAA; over 290 Section 508 (2017) tests; W3C standards compliance; browser compatibility; SEO; broken links; and security issues. SortSite is not a fringe or niche tool: it is used by over 30% of Fortune 100 companies, by government agencies including NASA, and by global organizations including Disney and UNICEF; it has been deployed in more than 50 countries, has tested over 2 million websites, and has scanned more than 524 million web pages. Since 2019, SortSite has consistently scored the best WCAG coverage in W3C ACT Rules implementation reports and is regularly cited in peer-reviewed academic papers as the gold standard for automated accessibility auditing. Multiple government agencies rely on SortSite as their primary tool for accessibility compliance audits. The audit conducted by Plaintiff's counsel scanned 1,370 pages and

files of www.detroitaxle.com and produced an Accessibility Report, a Broken Link Report, and a Site Quality Report, each of which confirmed systemic, sitewide failures.

32.    The SortSite Site Quality Report—which benchmarks www.detroitaxle.com against comparable websites—found that 259 pages presented quality issues, placing the Website worse than 81% of comparable sites; that 256 pages contained broken links or errors, placing the Website worse than 81% of comparable sites; that 257 pages presented W3C standards violations, placing the Website worse than 81% of comparable sites; and that 257 pages presented accessibility problems. These findings confirm that the barriers Plaintiff encountered were systemic, widespread, and present throughout the Website at the time of her attempts to access it.

33.    The SortSite Accessibility Report identified the following Level A WCAG 2.1 violations—the most severe classification, indicating that "Pages are unusable for some people"—across www.detroitaxle.com:

- Autoplay video without pause control (WCAG 2.1 A 2.2.2 / Section 508 A 2.2.2): The homepage contains a video that plays longer than five seconds with no mechanism for the user to pause, stop, or hide it. Because NVDA's speech output is overridden by the autoplaying audio, screen reader users—including Plaintiff—are prevented from accessing any audio content on the homepage while the video is running.

- Alt text is an image filename (WCAG 2.1 A F30 / Section 508 A F30): On five pages, including the homepage, the About page, the Create-Account page, and two Help-Center pages, image alt attributes contain raw filenames or placeholder values such as "car-white.svg" or the numeral "1." NVDA,

14

JAWS, and VoiceOver all read these values aloud as the accessible name of the image, providing Plaintiff with no useful description of the content depicted.

- Alt text contains placeholder like 'picture' or 'spacer' (WCAG 2.1 A F30): On five pages, alt attribute values consist of the numeral "1," which functions as a meaningless placeholder. Screen readers announce this value as the image description, providing Plaintiff with no information about what the image depicts.

- Images with null alt attribute improperly bear title/aria-label/aria-labelledby (WCAG 2.1 A F39): On 256 pages—virtually the entire Website, including all product pages and category pages—images that should be decorative (as indicated by their empty alt attribute) are simultaneously given a title, aria-label, or aria-labelledby attribute. NVDA reads some of these images aloud using the conflicting attribute value; VoiceOver reads the raw image filename. The result is that Plaintiff encounters a stream of unexpected, meaningless, or confusing image announcements on every page of the Website.

- Data tables with two or more logical header levels lack proper th/scope/headers markup (WCAG 2.1 A 1.3.1 / Section 508 A 1.3.1): On 151 pages—including all product detail pages for brake rotors, control arm assemblies, strut assemblies, sway bar links, and wheel bearing hubs—the specification and compatibility tables that are central to a consumer's ability to evaluate whether a part fits their vehicle lack proper th elements, scope

attributes, and headers associations. Screen readers, including NVDA, cannot convey the relationship between table headers and data cells, causing Plaintiff to receive rows of part numbers, dimensions, and compatibility values with no indication of what each value means.

- Empty headings (WCAG 2.1 A 1.3.1): On 153 pages, including the Help-Center/Warranties page and all ball-joints, control-arm-assembly, and strut-assembly product pages, heading elements appear in the HTML but contain no text. NVDA announces these as headings with no content, disrupting Plaintiff's ability to navigate the page by heading and forcing her to encounter structural noise with no informational value.

- HTML form control has no accessible name (WCAG 2.1 A F68 / Section 508 A F68): On 13 pages, including the Blog, Cart, Create-Account, Login, and six product category pages, form controls—including search fields, input fields, and interactive buttons—have no accessible name. NVDA reads only the control type (e.g., "edit" or "button") without any label, making it impossible for Plaintiff to understand what information each field requests or to interact with the control.

- Row/column headers not identified using th elements in data tables (WCAG 2.1 A F91): On two pages—rack-and-pinion-replacement-cost and wheel-hub-assembly-replacement-cost—tables present cost and compatibility data using td elements throughout, with no th elements to identify header rows or columns. Screen readers cannot distinguish headers from data, presenting all cells as equivalent.

16

- img elements without an accessible name (WCAG 2.1 A F65 / Section 508 A F65): On 256 pages—spanning the homepage, About, Blog, Cart, Create-Account, Help-Center, Return-Policy, Shipping, all Parts category pages, and all product detail pages—images have no accessible name at all. Depending on the version of assistive technology used, NVDA either ignores the image entirely or reads "image unlabeled"; JAWS ignores the image; VoiceOver reads the raw image filename. Plaintiff is therefore deprived of all information conveyed by product images throughout the Website.

34. The SortSite Broken Link Report identified the following Priority 1 issues across www.detroitaxle.com:  (i) on 125 pages, including the homepage, the About page, the Blog, the Cart, the Create-Account page, the Help-Center, and dozens of additional product and category pages, an Amazon advertising tracking pixel is embedded as an img element pointing to an Amazon URL that returns a text/html response rather than an image, causing browsers and screen readers to encounter a broken image reference in the page code on every one of those 125 pages; and (ii) on multiple pages, Facebook profile and photo links embedded in the Website—including https://www.facebook.com/profile.php?id=61584320936032 and a Facebook photo album link appearing in the homepage and category pages—return HTTP 400 Bad Request responses, indicating that these social media links, which are coded into the site's footer and navigation structure, are broken and non-functional.

35. On each of the three dates, Plaintiff attempted to evaluate the Front Brake Rotors (Pair), Part No. R-53022x2, and the 4pc Front & Rear Drilled and Slotted Brake

Rotors Kit, Part No. 4R1200498, to determine which product best met her vehicle's maintenance and safety requirements. Because the Website lacked accessible coding, Plaintiff was unable to obtain the same information available to sighted users and could not complete a purchase.

36.     The SortSite reports confirm that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. Of the 1,370 pages and files scanned, 257 presented accessibility problems, 256 contained broken links or errors, 257 presented W3C standards violations, and 259 presented quality issues, with the Website ranked worse than 81% of comparable sites across quality, broken-link, and standards dimensions. These findings demonstrate that Defendant's Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader technology.

*Plaintiff's Concrete Injury and Intent to Return*

37.     Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of purchasing brake components necessary for the safe operation of her 2021 Chrysler 300—the vehicle upon which she and her home health aide, family members, and close friends depend for transportation to her medical appointments and other necessary destinations. Her shopping objectives were personal, directly tied to her disability and circumstances, and connected to specific products she attempted to review on the Website.

38.     Plaintiff remains highly interested in purchasing automotive parts from Defendant and intends to return to the Website as soon as it is made accessible. Her intent to return is credible because:

- She continues to require brake components and other replacement parts for her 2021 Chrysler 300 to ensure the vehicle's continued safe operation on behalf of her home health aide, family members, and close friends who drive her to medical appointments, and the Front Brake Rotors (Pair) and the 4pc Front & Rear Drilled and Slotted Brake Rotors Kit are the specific products she identified as meeting the vehicle's maintenance needs.

- Defendant offers parts—including the Front Brake Rotors (Pair), Part No. R-53022x2, and the 4pc Front & Rear Drilled and Slotted Brake Rotors Kit, Part No. 4R1200498—that Plaintiff has been unable to independently evaluate and purchase due to the Website's inaccessible coding, notwithstanding that she was specifically informed that Defendant's prices are substantially lower than those of authorized dealers or garages.

- She has no alternative means of independently evaluating and ordering these parts without an accessible Website, as she cannot visually inspect or compare parts at a physical store or dealership due to her near-total blindness.

- Plaintiff intends to use www.detroitaxle.com to research and purchase additional replacement parts for her 2021 Chrysler 300—including suspension components, control arms, wheel bearings, and other safety-related parts—from Defendant's extensive product catalog once the Website is remediated, given the significant cost advantage over dealer pricing.

19

- She has demonstrated a pattern of repeated access attempts across three separate dates, confirming a genuine and continuing intent to purchase from Defendant's Website.

39.    Defendant's ongoing operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff's injury is ongoing because Defendant has no policy or plan to ensure accessibility, and the barriers she encountered remain uncorrected.

40.    Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

> All legally blind individuals in the United States who have attempted to access www.detroitaxle.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

42.    Plaintiff also seeks certification of a New York subclass consisting of:

20

All legally blind individuals residing in the State of New York who have attempted to access www.detroitaxle.com and were denied equal access to the goods, services, and information offered thereon.

43. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its automotive parts to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by the SortSite audits.

44. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;

- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;

- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;

- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and

- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

45.     Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite reports.

46.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

47.     Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

48.     Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 et seq.)

49.     Plaintiff Kelly McLean, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

51.     Defendant's Website, www.detroitaxle.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

52.     Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

53.     Defendant's Website, www.detroitaxle.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

54.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

55.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

23

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

56.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.detroitaxle.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

57.     Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief,

Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

58.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

59.     Plaintiff Kelly McLean, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendant.

61.     Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

62.     Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.detroitaxle.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

64. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

67. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can

26

demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68.    Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

69.    Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date.

70.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

71.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

72.    Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's Website

contains access barriers denying blind customers full and equal access to the products, services, and facilities offered throughout the Website.

74. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

### THIRD CAUSE OF ACTION
### (Violation of New York State Civil Rights Law)
### ("NYCRL")

75. Plaintiff Kelly McLean, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

77. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

78. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

79. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or

28

neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

80. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.detroitaxle.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

81. Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

82. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

83. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id.

84. Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
(Violations of the New York City Human Rights Law)
("NYCHRL")

85. Plaintiff Kelly McLean, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

87.     Defendant is subject to NYCHRL because it owns and operates the Website, www.detroitaxle.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

88.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the goods and services integrated therein completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

89.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

90.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

•     constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

•     constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or

•     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

91.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct and these violations are ongoing.

92.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

93.     Defendant's actions were intended to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

94.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

95.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

31

96.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

97.    Plaintiff Kelly McLean, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

99.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.    A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

32

B.      A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.detroitaxle.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;

C.      A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;

D.      An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

E.      An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and

F.   Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
June 1, 2026

> Respectfully submitted,
> JOSEPH & NORINSBERG LLC
> */s/ Robert L. Schonfeld*
> Robert L. Schonfeld
> 825 Third Avenue, Suite 2100
> New York, New York 10022
> (212) 227-5700
> rschonfeld@employeejustice.com
> Attorneys for Plaintiff

33